IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELECHI N. OTI, | § | |
| | § | |
| Movant, | § | |
| | § | No. 3:19-cv-00137-B (BT) |
| v. | § | No. 3:13-cr-0481-B-4 |
| | § | |
| UNITED STATES of AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is movant Elechi N. Oti's amended motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255. The District Court referred the matter to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the Court should dismiss in part and deny in part Oti's amended motion, or in the alternative, deny the motion in its entirety.

**Background**

In 2015, a jury convicted Oti of conspiring to unlawfully distribute a controlled substance in violation of 21 U.S.C. § 846 (21 U.S.C. § 841). At trial, the government's theory of the case was that Oti and her codefendants, Theodore E. Oechuku, Ignatius O. Ezenagu, Emmanuel C. Iwuoha, David L. Reed, Jerry K. Reed, and Kelvin L. Rutledge, operated a "pill mill" out of a pain-management clinic in Dallas, Texas, called Medical Rehabilitation Clinic (MRC). Various

members of the conspiracy recruited "patients"—often from homeless shelters—drove them to MRC, and paid for their examination, in cash. Almost every patient seen at MRC obtained a prescription for hydrocodone. After the patients received their prescriptions from MRC, the recruiters paid fill the prescriptions and kept the hydrocodone to be resold later. For her part, Oti, a physician's assistant, performed cursory examinations of patients at MRC three days a week and wrote almost every patient she saw a prescription for hydrocodone, without a legitimate medical purpose. On March 30, 2016, the District Court sentenced Oti to 97 months' imprisonment. Oti appealed to the Fifth Circuit Court of Appeals, and the Court affirmed her conviction and sentence on October 3, 2017. Oti did not file a petition for certiorari in the Supreme Court.

On December 19, 2017, the Court received Oti's *pro se* "Motion to Have Sentence Reviewed," which she filed in the underlying criminal action.[1] (CR ECF No. 549.) The Court construed her filing as a § 2255 motion (CR ECF No. 555) and opened a new civil action. (Case No. 3:18-cv-196-B.) However, Oti advised that she did not want her filing construed as a § 2255 motion. Accordingly, the Court determined it lacked jurisdiction to grant the relief sought and denied her motion with prejudice. (Case No. 3:18-cv-196-B, ECF Nos. 7-10.)

---

[1] For purposes of these Findings, Conclusions, and Recommendation, "CR ECF" refers to Oti's criminal case, case number 3:13-cr-481-B-4, and "CV ECF" refers to this civil action, case number 3:19-cv-137-B-BT.

On September 20, 2018, the Court received Oti's *pro se* "Amended Motion Under 18 U.S.C. Section 2255," which the Court considers her original § 2255 motion. (Case No. 3:18-cv-196, ECF No. 11; Case No. 3:19-cv-137-B-BT, ECF No. 2.) In more than twenty claims for relief, she argues:

(1) her trial attorney failed to conduct a pretrial investigation and also failed to hire an investigator to investigate her case;

(2) her trial attorney failed to file a motion to suppress evidence;

(3) her trial attorney failed to advise her that she could get a reduction in her sentence for acceptance of responsibility if she pleaded guilty;

(4) her trial attorney failed to contact potential witnesses, failed to interview prospective witnesses, and failed to do any discovery;

(5) her trial attorney failed to object and investigate the time frame the security guards were hired, their roles and purposes prior to her being hired by Dr. Okechuku, the owner of the clinic, and Ignatius O. Ezenagu, the business manager;

(6) her trial attorney failed to communicate and investigate the reason why she left the clinic;

(7) her trial attorney failed to accompany her to proffer evidence to correct the inaccuracies in the Presentence Report (PSR) from the seized documents from MRC;

(8) her trial attorney advised her not to testify;

(9) her trial attorney failed to object or investigate the statement in the PSR that "defendant knew that most of the individuals coming to the clinic were being recruited from homeless shelters and driven to the medical clinic by their recruiters";

3

(10) her trial attorney failed to investigate the facts in the PSR regarding why the "FBI opened an investigation into MRC located at 9304 Forest Lane Suite 256 in Dallas, Texas, operated by Theodore E. Okechuku in 2011 prior to defendant's employment";

(11) her trial attorney failed to object to the fact that her sentence was based in part on false information in the PSR that resulted in an increase in the scope of relevant conduct, especially regarding the information that states "defendant Elechi N. Oti . . . unlawfully combined, conspired and agreed to . . . distribute and dispense hydrocodone . . . outside the scope of professional practice";

(12) her trial attorney failed to object to the fact that defendant Oti was employed by Dr. Okechuku, and Oti did not have a proprietary interest in the clinic or company. She was compensated for seeing patients according to a statement in the PSR, "Oti and Iwuoha were compensated per patient";

(13) her trial attorney failed to object to the fact that she had a "fiduciary relationship" that of "physician and physician assistant" and according to the PSR, "[t]herefore, Okechuku delegated the task of seeing patients to [a] licensed physician Assistant";

(14) her trial attorney failed to object to the gun enhancement;

(15) her trial attorney failed to object to the PSR statement that, "pursuant of USSG 3B1.3, if the defendant abused a position of public or private trust or used a special skill in a manner that significantly facilitated the commission or concealment of the offense, the offense level is increased by 2 levels";

(16) her trial attorney failed to object to the use of the November 1, 2013 Guideline Manual to sentence her and failed to challenge the "EX Post Facto Clause," violation of the Constitution, as stated in the PSR;

(17) her trial attorney failed to object to the base offense level of 26;

(18) her appellate attorney failed to challenge the fact that the District Court denied her 18 U.S.C. § 3582(c)(2) motion based on inaccurate information provided by U.S. Probation on February 2, 2018;

(19) her appellate attorney failed to seek a sentence reduction under U.S.S.G. § 3B1.2 due to her minor or minimal role in the offense, because her trial attorney failed to preserve the issue at trial;

(20) her trial and appellate attorneys failed to adequately argue the application of non-criminal conduct for enhancements under the sentencing guidelines; and

(21) her trial attorney failed to hire a mitigating specialist to investigate her background for 18 U.S.C. § 3553(a) factors and also failed to challenge the Court for not considering the § 3553(a) factors for her at sentencing.

*See* (CV ECF No. 2.)

On April 15, 2019, retained counsel entered a notice of appearance (CV ECF No. 7) and filed an amended § 2255 motion (CV ECF No. 8) on Oti's behalf. Counsel abandoned most of the claims Oti raised in her original, *pro se* § 2255 motion, arguing only:

(a) her trial attorney provided ineffective assistance of counsel by failing to properly advise her about pleading guilty pursuant to a plea agreement or pleading "open" without a plea agreement to count one (claim one);

(b) her trial attorney provided ineffective assistance of counsel by failing to object to the District Court's failure to use the 2015 United States Sentencing Guidelines (U.S.S.G) manual when determining her sentence (claim two);

(c) her trial attorney provided ineffective assistance of counsel by failing to request a minor role adjustment based on Amendment 794 (claim three); and

(d) her appellate attorney failed to argue on appeal that her guideline range was miscalculated by use of the 2013 U.S.S.G. manual (claim four).

*See* (CV ECF No. 8.) *See Terrell v. Davis*, 2019 WL 2744848, at *6 n.7 (S.D. Tex. July 1, 2019) ("Terrell apparently has abandoned his claim of actual innocence, which he raised in his original petition but not his amended petition."); *Garrison v. United States*, 2013 WL 3989103, at *2 n.1 (N.D. Tex. Aug. 5, 2013) (noting that the movant raised ineffective assistance of counsel claims in his original § 2255 motion but not in his amended § 2255 motion, so the ineffective assistance of counsel claims were abandoned). Then, on July 15, 2019, Oti expressly abandoned claim two and claim four of her amended § 2255 motion. Am. Mot. Br. 6 & n.2 (CV ECF No. 13) ("Oti abandons Grounds Two and Four of her § 2255 motion. As a result, briefing herein is limited to the issues raised in Grounds One and Three of Oti's § 2255 motion.").

With respect to the two remaining claims, the government argues the Court should dismiss claim one as time-barred or, in the alternative, deny claim one as meritless, and it should deny claim three on the merits. (CV ECF No. 16.) Oti subsequently filed a reply in which she argues she is entitled to an evidentiary hearing. (CV ECF No. 19.) Thus, the briefing is complete, and Oti's amended § 2255 motion is ripe for determination.

## Legal Standards and Analysis

### 1. Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for federal habeas proceedings. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, Pub. L. 104-132, 110 Stat. 1214 (1996). The statute provides that the limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. § 2255(f).

In most cases, the limitations period begins to run when the judgment becomes final. *See* 28 U.S.C. § 2255(f)(1). And a judgment becomes final when the applicable period for seeking review of a final conviction expires. In this case, the Fifth Circuit affirmed Oti's conviction and sentence on October 3, 2017. Oti then had 90 days to file a petition for a writ of certiorari to the Supreme Court. *See* Sup.

Ct. R. 13 (A petition for writ of certiorari "is timely when it is filed within 90 days after entry of the judgment."). Oti did not seek certiorari review; therefore, her conviction became final on January 1, 2018. *See Clay v. United States*, 537 U.S. 522, 532 (2003) (holding that "§ 2255's one-year limitation period starts to run when the time for seeking [certiorari] review expires"). Because January 1, 2018, was a federal holiday, the deadline for seeking review extended to January 2, 2018. *See* Fed. R. App. P. 26(a)(3) (2008) (extending the date when the final day falls on a holiday); Sup. Ct. R. 30(1) (explaining that the last day of the period is extended if it is a federal holiday). Oti then had one year, or until January 2, 2019, to file her § 2255 motion.

Oti timely filed her original § 2255 motion on September 17, 2018.[2] *See* Mot. 10 (CV ECF No. 2). However, she did not file her amended § 2255 motion until April 15, 2019—almost four months after the limitations period expired. Therefore, the timeliness of the claims in Oti's amended § 2255 motion depends on whether those claims relate back to her original § 2255 motion. *See Mayle v. Felix*, 545 U.S. 644, 649 (2005) (Under Federal Rule of Civil Procedure 15(c)(2), pleading amendments relate back to the original pleading when the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth

---

[2] Under the prison mailbox rule, a prisoner's *pro se* filing is deemed filed when it is delivered to prison authorities for mailing to the court's clerk. *Houston v. Lack,* 487 U.S. 266, 276 (1988); *Medley v. Thaler*, 660 F.3d 833, 840 (5th Cir. 2011). Oti signed and dated her original § 2255 motion on September 17, 2018, *see* Mot. 10 (CV ECF No. 2), and the Court presumes she gave her motion to prison officials on that date.

or attempted to be set forth in the original pleading") (citing Fed. R. Civ. P. 15(c)(2)); *see also United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading[.]") (quoting Fed. R. Civ. P. 15(c)(1)(B)).

Oti argues that the claims in her amended § 2255 motion relate back to her original motion. Am. Mot. 11 (ECF No. 8).

### a. Relation Back

It is well-established that Federal Rule of Civil Procedure 15 applies in § 2255 proceedings. *Mayle*, 545 U.S. at 655; *see also United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002). Under Rule 15, an untimely claim is not barred by limitations if it relates back to the original, timely-filed § 2255 motion. Fed. R. Civ. P. 15(c)(1)(B); *Gonzalez*, 592 F.3d at 679; *see also United States v. Duffus*, 174 F.3d 333, 338 (3d Cir. 1999) ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period."). However, new claims "do not automatically relate back to prior [ ] claims simply because they violate the same constitutional provision." *Gonzalez*, 592 F.3d at 680. Rather, "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Saenz*,

282 F.3d at 356. The court "must look to whether [the movant's] new claim asserts 'a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" *Gonzalez*, 592 F.3d at 680 (quoting *Mayle*, 545 U.S. at 650).

   In claim one of her amended § 2255 motion, Oti alleges that her trial attorney, William A. Bratton, III, rendered ineffective assistance of counsel when he failed to convey favorable plea offers to her and failed to explain that she could plead guilty without a plea agreement to the original indictment, prior to the return of the superseding indictment. Am. Mot. Br. 7 (CV ECF No. 13); *see also* Am. Mot. 4 (CV ECF No. 8). But these allegations are distinctly different from the numerous allegations contained in her original § 2255 motion, which focus on Bratton's supposed ineffective assistance in failing to investigate her case, contact witness, conduct discovery, file pre-trial motions, and object to the PSR.

   The closest the allegations in Oti's amended § 2255 motion get to the allegations in her original motion is her averment that Bratton "fail[ed] to advise [her] that she could obtain reduction in her sentence for acceptance of responsibility simply by pleading guilty." Mot. 12 (CV ECF No. 2). However, Bratton's alleged failure to inform Oti about a sentencing benefit she could receive if she pleaded guilty at any time sufficiently before trial arises from a different core of operative facts than his alleged failure to convey formal plea offers to her or to inform her of her ability to plead guilty without a plea agreement to the original indictment. Claim one in Oti's amended § 2255 motion is based on a different type

of facts, occurring at a different time, than the facts alleged in her original motion. *See Gonzalez*, 592 F.3d at 680 ("If [a new claim asserts a new ground for relief supported by facts that differ in both time and type from those in the original pleading] then [the] proposed amendment does not relate back to [the] original pleading and is time-barred."); *see also United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006) (holding that the trial court did not abuse its discretion when it found that the movant's claim for ineffective assistance of counsel on cross-examination did not relate back to the claims contained in his original § 2255 motion because they were "not similar enough to satisfy the 'time and type' test, nor do they arise out of the same set of operative facts"). Therefore, claim one in Oti's amended § 2255 motion does not relate back to her original § 2255 motion, and the Court should dismiss claim one as time-barred.

**b. Equitable Tolling**

The one-year limitation period is subject to equitable tolling in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling" (quoting *Davis*, 158 F.3d at 811)). The Fifth Circuit has held that "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *abrogation on other grounds*

*recognized by Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). A movant bears the burden of proof to show she is entitled to equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

As noted above, Oti's amended § 2255 motion was not timely filed, and claim one does not relate back to her original § 2255 motion. Oti does not allege that she is entitled to the benefit of equitable tolling; nor does she demonstrate she is entitled to equitable tolling. She has failed to plead any facts showing she was misled by the government or prevented in some extraordinary way from asserting her rights. Oti is therefore not entitled to equitable tolling.

Therefore, the Court should dismiss claim one in Oti's amended § 2255 motion as time-barred. But even if claim one was timely, it should be denied as meritless.

### 2. Merits: Ineffective Assistance of Counsel

In claim one of her amended § 2255 motion, Oti argues that her trial attorney, Bratton, provided ineffective assistance by failing to convey favorable plea offers to her and failed to explain that she could plead guilty without a plea agreement to the original indictment, prior to the return of the superseding indictment. Am. Mot. 4 (CV ECF No. 8); Am. Mot. Br. 6-8 (CV ECF No. 13); *see also* Oti Decl. 2-3 (CV ECF No. 13-1). In claim three, she argues that Bratton provided ineffective assistance by failing to request a minor-role reduction at sentencing, based on Amendment 794 to U.S.S.G. § 3B1.2.

12

To prevail on a claim of ineffective assistance of counsel, a movant must show that: (1) her counsel's performance was deficient; and (2) the deficient performance prejudiced her defense so gravely as to deprive her of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if she proves her counsel's performance was deficient, a movant must still prove prejudice. To prove prejudice, a movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

As set forth below, claim one of Oti's amended § 2255 motion fails under the first prong of *Strickland,* and claim three fails the prejudice prong. Accordingly, the Court should deny Oti's amended § 2255 motion as meritless.

### a. Claim One

Oti fails to show her attorney's performance was deficient because her allegation that Bratton failed to convey plea offers to her is speculative and conclusory. Further, her allegations that Bratton failed to convey plea offers to her and failed to inform her that she could plead guilty without a plea agreement are belied by Bratton's affidavit and other evidence in the record. And even assuming that Bratton failed to advise Oti that she could plead guilty without a plea agreement, Oti still fails to show that Bratton's performance was deficient.

Oti alleges that Bratton was "ineffective for failing to convey favorable plea offers to [her] before the superseding indictment was returned," and she would have "accepted the Government's first plea offer—to the extent the Government made one and it was favorable—rather than proceeding to trial." Am. Mot. Br. 7 (CV ECF No. 13-1). Certainly, it is deficient performance for an attorney to fail to convey a formal, favorable plea offer to his client. *Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). But claim one fails because it is speculative and conclusory.

"[M]ere conclusory allegations on critical issues are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam) (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)). Where a habeas petitioner fails to brief an argument adequately, it is considered

14

waived. *Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (citing *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). "[C]onclusory allegations of effective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1993)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

As the government points out, Oti's claim can be reduced to her speculation that "*[i]f* the government made a plea offer before the superseding indictment was returned, *if* the offer was favorable, and *if* Bratton failed to convey it to her, then Bratton was ineffective because she would have taken the offer." Resp. 17 (ECF No. 16). Her claim fails because she does not particularly allege that the government made any formal plea offer; nor does she suggest the specific terms or conditions of any offer. *See* Oti Decl. (CV ECF No. 13-1 ). She does not allege that Bratton failed to convey any actual formal plea offer to her. *Id.* She merely states that she "do[es] not recall Bratton ever discussing with [her] the possibility of pleading guilty pursuant to a plea agreement." *Id.* ¶ 5. And she only hypothesizes that the government *might* have made a favorable plea offer before the grand jury returned the superseding indictment, which Bratton *may* have failed to convey to her. *Cf. Missouri*, 566 U.S. at 138-39 (discussing that a letter from the prosecutor sent to defense counsel offered a choice of two plea bargains, and the letter outlined the

15

terms and conditions of both offers). Oti's speculative and conclusory allegations fall short of proving deficient performance under *Strickland*. *See Miller*, 200 F.3d at 282.

Claim one also fails because Oti's allegations are inconsistent with the affidavit from Bratton and real-time emails between Bratton and the Assistant United States Attorney (AUSA) who prosecuted the case. In Bratton's affidavit, he states, "[t]hroughout the course of [his] representation of Elechi N. Oti, the offers of the United States Attorney in return for Elechi N. Oti's plea of guilty to the indictment were discussed extensively." Bratton Aff. 2 (CV ECF No. 16). He explains, "Oti['s] primary concern throughout [his] representation of her was her being able to maintain her medical license," which meant that "all negotiations regarding a plea of guilty were contingent on her not obtaining a felony conviction so she could maintain her medical license." *Id.* In addition, Oti's "position was that she was not aware of any of the illegal activities being perpetrated by other members of the conspiracy." *Id.* Oti was "completely aware of all of the evidence that the government was preparing to use against her at trial," but she "maintained her innocence of any knowledge of the illegal activities and declined all plea agreements that did not involve her being able to maintain her medical license." *Id.*

Bratton's affidavit is consistent with and supported by real-time emails included in the record. For example, in an email Bratton sent to Oti approximately one week before the grand jury returned the superseding indictment, Bratton tells

her that the AUSA is giving notice of her intention to present a superseding indictment to the grand jury "to allow any defendant to enter into a plea agreement [to the original indictment] before she adds the Firearm count[.]" Resp. 42 (CV ECF No. 16). Also, in an email sent about two months before trial, the parties started with the recognition that Oti wanted to go to trial. *Id.* 31. In an August 14, 2015 email to Bratton, the AUSA asks, "Does Oti *still* want a trial or any chance of a plea?". Bratton responded, "Chance of plea," "involves her maintaining her medical license – she had twins earlier this year – I am sure any offer to resolve with assurance of no incarceration would have to be a strong consideration." *Id.* As these emails reflect, Bratton talked with Oti regarding the possibility of pleading guilty, and Oti made it clear to him that she had no interest in pleading guilty to a charge that would cause her to lose her medical license. These emails, in addition to Bratton's affidavit, belie Oti's self-serving, conclusory allegations that Bratton failed to convey plea offers to her and failed to tell her that she could plead guilty without a plea agreement.

Further, even if Bratton failed to tell Oti that she could plead guilty to the indictment without a plea agreement or that she could receive a sentence reduction for acceptance of responsibility, Oti still fails to show that Bratton provided deficient performance.[3] Deficient performance is established by "show[ing] that

---

[3] This argument applies only to Oti's claim that Bratton provided deficient performance by failing to tell her she could plead guilty without a plea agreement to get a sentence reduction for acceptance of responsibility.

counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also United States v. Bernard*, 762 F.3d 467, 471 (5th Cir. 2014). To meet this standard, a movant must show that his trial attorney's error was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, ____, U.S. ____, 137 S. Ct. 759, 775 (2017) ("It is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland's* first prong is satisfied")). In the court's evaluation of counsel's performance, it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Bell v. Cone*, 535 U.S. 685, 702 (2002) (citing *Strickland*, 466 U.S. at 689).

Bratton's affidavit, the emails between Bratton and the AUSA, and Oti's statements and actions demonstrate that Oti's primary concern was to maintain her medical license. Oti cannot show that Bratton's alleged failure to advise her to plead guilty to the indictment without a plea agreement to secure acceptance of responsibility, a path that would have jeopardized and likely defeated her objective of maintaining her medical license, was unreasonable performance. In sum, Oti has failed to show that Bratton provided deficient performance, and for this reason alone, her claim fails. *Strickland*, 466 U.S. at 687 (recognizing both prongs of the *Strickland* test must be met to demonstrate ineffective assistance of counsel.); *Wong v. Belmontes*, 558 U.S. 15, 16 (2009) (same); *see also Motley v. Collins*, 18

18

F.3d 1223, 1226 (5th Cir. 1994) (noting that the court need not address both prongs of the conjunctive *Strickland* standard, as it may dispose of a claim based solely on the failure to meet either prong of the two-pronged standard).

But Oti also fails to demonstrate prejudice under the second prong of *Strickland*. To show prejudice, a movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When making this determination, a court must "consider *all* the relevant evidence that the jury would have had before it if [trial counsel] had pursued the right path." *Wong*, 558 U.S. at 20. The issue "is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel [had] acted different." *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (citing *Wong*, 558 U.S. at 27). Rather, a movant must demonstrate that the "likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

For Oti to demonstrate prejudice here, she must show a reasonable probability that if her trial attorney, Bratton, had properly conveyed a plea offer from the government, she would have accepted the plea offer and received a lighter sentence. *See Missouri*, 566 U.S. at 147 ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded

effective assistance of counsel."). However, Oti fails to demonstrate a reasonable probability that she would have pleaded guilty if Bratton had conveyed a plea offer to her or advised she could plead guilty to the indictment without a plea agreement and received a benefit at sentencing for acceptance of responsibility. Oti avers that she "would have pleaded guilty either to an open plea or [she] would have accepted a reasonable plea agreement from the Government that she was limited to Count One of the original indictment[.]" Oti Decl. 2 (CV ECF No. 13-1). Oti also contends that she would have pleaded guilty to a lesser charge than count one. *Id.* However, Oti has not shown that the government offered her a plea deal involving a lesser charge. And the government represents that it did not make such an offer. Resp. 22 n.11 (CV ECF No. 16). Also, the pre-trial emails between Bratton and the AUSA, as set forth in the record, reflect that the government did make any such offer. *Id.* 31.

Oti's belated, self-serving allegations are refuted by the record. First, Oti does not suggest that her original attorney, Camille M. Knight, provided deficient performance, and Oti did not decide to plead guilty to count one during the time she was represented by Knight, which contradicts Oti's contention that but for Bratton's alleged failures, she would have pleaded guilty to count one. Knight represented Oti from her initial appearance, on December 20, 2013, until Knight withdrew from her representation, on September 23, 2014. (CR ECF Nos. 44, 101.) Then, Bratton took over Oti's representation on September 23, 2014—about three months before the grand jury returned the superseding indictment. (CR ECF Nos.

104, 129.) Knight represented Oti during most of the time the indictment was pending, but Oti makes no claim that Knight provided ineffective assistance of counsel. The fact that Oti did not agree to plead guilty to count one during the nine months she was represented by effective counsel undercuts her current claim that she would have pleaded guilty to count one if she had effective assistance.

Second, the real-time emails between Bratton and the AUSA and Bratton's affidavit demonstrate that Oti had no intention of pleading guilty to anything that threatened to end her career as a physician's assistant. For example, Bratton advised the AUSA months before trial that any "[c]hance of plea involves [Oti] maintaining her medical license[.]" Bratton's Aff., Resp. 31 (ECF No. 16). Pleading guilty to count one, a conspiracy to unlawfully distribute a controlled substance outside the scope of professional practice and without a legitimate medical purpose, in violation of 21 U.S.C. § 846 (21 U.S.C. § 841), would likely have ended Oti's medical career. For this reason, Oti fails to demonstrate a reasonable probability that she would have pleaded guilty if only Bratton had told her she could plead guilty without a plea agreement and explained the sentencing reduction for acceptance of responsibility. *See* Bratton's Aff., Resp. 31 (CV ECF No 16); *see also* PSR ¶ 79 ("[Oti] expressed her concern that, should her felony conviction stand, all of her medical licenses will terminate."); PSR ¶ 80 ("[Oti] was terminated from her position as a Resident Physician following her conviction for the instant offense. A representative of the residency program advised, although

21

the defendant performed satisfactorily in the program, she is not eligible for rehire if her conviction stands.").

Third, the fact that Oti continued in a medical residency program while under criminal charges also suggests she had no intention of pleading guilty to count one. In fact, even while under indictment and up to the date her trial started, Oti invested significant time, energy, and resources in establishing a future medical career. (PSR ¶ 1) (Oti's indictment was unsealed on December 5, 2013); (PSR ¶ 80) ("[Oti] was terminated from her position as a Resident Physician following her conviction for the instant offense."); (CR ECF No. 385 at 43) (noting that at the time of her trial, Oti was completing her residency in Augusta, Georgia); (PSR ¶ 74) ("[Oti] was engaged in [residency training] at the Medical College of Georgia at Regents University, Department of Psychiatry and Health Behavior, in Augusta upon her conviction in October 2015."); (PSR ¶ 79) ("[Oti] advised she wishes to complete the psychiatry residency program and practice as a psychiatrist. She expressed her concern that, should her felony conviction stand, all of her medical licenses will terminate.").

Fourth, Oti's unrelenting claims that she was innocent also suggest she would not have pleaded guilty. At trial, Bratton argued that Oti was only working part-time at MRC and "whatever was going on there wasn't part of what she was doing"–she was just "following the protocol, procedures, that were done there," and she was "not a willful member of a drug dealing organization." (CR ECF No. 385 at 42, 44; CR ECF No. 415 at 101.) When Oti met with the probation officer for

an interview following her conviction, she continued to "maintain[ ] her innocence and advised she [was] appealing her conviction," and even stated that she "always thought her employment at MRC was 'on the up and up.'" (PSR ¶ 42.) Then, on appeal, Oti challenged the sufficiency of the evidence supporting her conviction, arguing that "there [was] no evidence that [she] knowingly agreed to violate the narcotics laws and voluntarily participate in the conspiracy." (*United States v. Oti*, No. 16-10386, Oti Appellant Br. at 25.) Also, in her original *pro se* § 2255 motion, Oti continued to maintain her innocence, claiming she "was not aware of what was going on [at MRC]" and arguing that "[t]here was no direct evidence introduced at trial to show any such agreement to unlawfully prescribe controlled substances." Mot. 19, 21-22 (CV ECF No. 2). Because Oti consistently protested her guilt, she fails to show a reasonable probability that but for Bratton's alleged deficient performance, she would have pleaded guilty. *See United States v. Baldovinas*, 2015 WL 13388111, at *8 (W.D. Tex. June 3, 2015) ("These protestations of innocence also provide an independent reason to disbelieve Movant's conclusory assertion— advanced in his memorandum and apparently abandoned at the evidentiary hearing—that Movant would have pleaded guilty if he had been aware of his true sentencing exposure.") (citing *Untied States v. Moore*, 416 F. App'x 454, 462 (5th Cir. 2011)); *Self v. United States*, 2013 WL 12233458, at *8 (W.D. Tex. Oct. 24, 2013) ("Movant cannot demonstrate ineffective [assistance] of counsel nor prejudice from [the alleged failure to engage in plea bargaining with the

government] since he claimed to be innocent of the conspiracy charge, and appears to maintain that position even to this day.").

For these reasons, Oti has not shown she would have pleaded guilty, and she fails to demonstrate ineffective assistance of counsel under both prongs of *Strickland*. Consequently, the Court should deny the first claim in Oti's amended § 2255 motion.

### b. Claim Three

In claim three of her amended § 2255 motion, Oti argues that Bratton provided ineffective assistance by failing to request a minor-role reduction based on Amendment 794 to U.S.S.G. § 3B1.2. This claim fails, however, because Oti has not shown a reasonable probability that, if Bratton had argued for the reduction, the outcome of her sentencing proceedings would have been different.

In the Fifth Circuit, at sentencing, a defendant "is only entitled to a mitigating role adjustment if she showed by a preponderance of the evidence: (1) the culpability of the average participant in the criminal activity; and (2) that she was substantially less culpable than that participant." *United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016) (footnote omitted); *see also United States v. Player*, 846 F. App'x 305, 305 (5th Cir. 2021). Amendment 794 introduced a list of non-exhaustive factors that the sentencing court should consider when determining whether to apply a mitigating role adjustment. *United States v. Gomez-Valle*, 828 F.3d 324, 329 (5th Cir. 2016). The factors are:

> '(i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity'; and '(v) the degree to which the defendant stood to benefit from the criminal activity.'

*Id.* (quoting U.S.S.G. app. C, amend. 794, at 116 (Supp. Nov. 1, 2015)). A defendant is not entitled to a § 3B1.2 adjustment merely because he "played a lesser role than others in the criminal activity." *Castro*, 843 F.3d at 613. The defendant bears the burden of showing his entitlement to a mitigating role adjustment. *Id.* at 612.

Here, Oti does not make any showing regarding the culpability of the average participant in the criminal activity. She compares herself to co-defendants Okechuku and Iwuoha, and she assumes they represent the average participants. Am. Mot. Br. 9 (CV ECF No. 13). But this comparison is not supported by the record, which shows several participants were involved in the criminal scheme. For example, the recruiters bringing fake patients into the clinic, the individuals pretending to be patients, the office workers engaged in daily operations of the pill mill, the armed security guards protecting the cash taken in by the pill mill, the physician's assistants writing unlawful prescriptions, and the drug dealers selling the drugs on the street. (PSR ¶¶ 17-21.) Okechuku and Iwuoha do not represent the "average" participant here.

Okechuku, the owner of MRC, was the most culpable participant in the criminal activity, and contrary to Oti's claims, merely being less culpable than the most culpable participant does not entitle her to mitigating-role reduction. (PSR ¶ 16.) *See United States v. Lorensito Garrido*, 843 F. App'x 644, 644 (5th Cir. 2021) (per curiam) ("The Guidelines, however, do not provide an 'affirmative right to a §3B1.2 reduction to every actor *but* the criminal mastermind.'") (quoting *Gomez-Valle*, 828 F.3d at 331 (emphasis in original)).

Oti also fails to demonstrate that she was substantially less culpable than Iwuoha. While Oti makes much of the fact that Iwuoha wrote more prescriptions than she did, Oti fails to recognize that she was only held accountable for the prescriptions personally written by her.[4] (PSR ¶¶ 34, 37, 45: CR ECF No. 353-1 at 2.) Moreover, with respect to criminal activity for which she was held responsible, she fails to point to any evidence suggesting she was substantially less culpable than Iwuoha.

Additionally, to the extent MRC employees, like Oti, were paid to do a job and were average participants, Oti fails to demonstrate that she was *substantially* less culpable than the average participant. Section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal

---

[4] Iwuoha did not hold a medical or nursing license in the State of Texas, but he represented himself to be a licensed physician and used Okechuku's signature and DEA prescription authority to provide fraudulent prescriptions. (PSR ¶ 20.)

activity". *Id.* (citing U.S.S.G. § 3B1.2, cmt. n.3(A)). Oti wrote hydrocodone prescriptions in exchange for cash-only fees. She thus was not "peripheral to the advancement of the illicit activity." *United States v. Tremelling*, 43 F.3d 148, 153 (5th Cir. 1995) (quoting *United States v. Thomas*, 932 F.2d 1085, 1092 (5th Cir. 1991)). Rather, Oti was critical to the criminal activity. The evidence presented at trial demonstrates that Oti prescribed hydrocodone to almost anyone who walked in the door, and she knew what the drug dealers were doing at MRC. (CR ECF No. 388 at 41-44; CR ECF No. 479 at 20-21; Gov.'s trial exhibits 13, 16-12, 21; *see also United States v. Oti*, 872 F.3d 678, 688-89 (5th Cir. 2017) (finding "ample evidence" of Oti's guilt and concluding she knew what Jerry Reed and the others were doing at the clinic). In fact, there is no reasonable probability that the District Court would have found Oti substantially less culpable than the other MRC employees, given the evidence of the following: (i) her high-level of education and training as compared to the other MRC employees (PSR ¶¶ 74-78); (ii) the degree to which she understood the scope and structure of the conspiracy, as evidenced by her concerted actions to operate MRC as a pill mill and her apparent familiarity with the drug dealers who frequented the clinic; (iii) the nature and extent of her participation, including personally issuing at least 2,664 illegal prescriptions (PSR ¶ 34); and (iv) her involvement with other pill mills before MRC. (CR ECF No. 412 at 146-50; PSR ¶¶ 84-85.)

Moreover, at sentencing, the District Court stated, "I heard the evidence for two weeks and saw the video," and "I think [Oti] did know what was going on."

27

"She made that decision . . . to work at a place like [MRC]" because it was "easy money." (CR ECF No. 479 at 20.) The District Court further stated, "[Oti's] involvement was more than what she's trying to portray." *Id.* 21.

Considering Oti has not made the requisite showing for a mitigating-role reduction, in addition to the District Court's statements at sentencing, Oti has not demonstrated that Bratton provided ineffective assistance by failing to request a minor-role reduction under § 3B1.2. Accordingly, Oti's third claim should be denied.

### 3. Evidentiary Hearing

Finally, Oti argues that—at this stage in the proceedings—she is entitled to an evidentiary hearing because the record does not conclusively refute her allegations. Reply 1, 2 (CV ECF No. 19). A district court must hold an evidentiary hearing under § 2255(b), "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981) (citing *Sosa v. United States*, 550 F.2d 244, 250 (5th Cir. 1977)). However, the court need not hold an evidentiary hearing if the movant fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citing *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)). As discussed above, the motion and the files and records of the case conclusively show that Oti is not entitled to relief. Her first claim is untimely and meritless, and

28

her third claim also is meritless. Thus, Oti is not entitled to an evidentiary hearing, and the Court should deny her request for one.

**Recommendation**

The Court should DISMISS as time-barred claim one of Oti's amended motion to vacate, set-aside, or correct her sentence under 28 U.S.C. § 2255, or in the alternative, DENY it. The Court should also DENY claim three of Oti's amended § 2255 motion.

Signed August 11, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).